**UNITED STATES of America, Appellee,**

v.

**Anthony TODISCO, Anthony Vallone, John Campopiano, Salvatore Sferrazza, Alfonse Zambuto, Leonard Barracano, and David D'Angelo, Defendants-Appellants.**

Nos. 1380–1, 1385–6, 1391–2 and 1395, Dockets 81–1052 to 81–1058.

United States Court of Appeals, Second Circuit.

Argued May 20, 1981.

Decided May 22, 1981.

Certiorari Denied Jan. 18, 1982.
See 102 S.Ct. 1250, 1251.

---

Barry I. Slotnick, New York City (Jay L. T. Breakstone, New York City, on the brief), for appellant Todisco.

Michael Young, New York City (Goldberger, Feldman, Dubin & Young, New York City, on the brief), for appellant Vallone.

Julia Heit, New York City (Edward Panzer, New York City, on the brief), for appellant Barracano.

Michael L. Santangelo, New York City, for appellant Campopiano.

Anthony V. Lombardino, Kew Gardens, N. Y., for defendant-appellant Sferrazza.

Albert A. Gaudelli, Flushing, N. Y., for appellant Zambuto.

Steven B. Duke, New Haven, Conn., for defendant-appellant D'Angelo.

Richard A. Martin, Asst. U. S. Atty., New York City (John S. Martin, Jr., U. S. Atty., Lawrence F. Ruggiero, Mark F. Pomerantz and Mary Jo White, Asst. U. S. Attys., New York City, on the brief), for appellee.

Before MOORE, TIMBERS and MESKILL, Circuit Judges.

TIMBERS, Circuit Judge:

Appellants were convicted on various counts of a fifteen count indictment which charged them with conspiracy, and the distribution, possession and possession with in-

tent to distribute heroin, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), 846 and 18 U.S.C. § 2 (1976). All appellants except D'Angelo pled guilty following the denial of their motions to suppress cèrtain evidence, but preserved their right to appeal from the denial of their pre-trial motions. D'Angelo was convicted following a jury trial. From the judgments of conviction [1] entered on February 4, 1981, Robert J. Ward, *District Judge*, all appellants have appealed. For the reasons below, we affirm the convictions of all appellants on all counts.

The indictment followed a four month investigation by 65 agents of the Drug Enforcement Administration (DEA). The investigation concluded on September 3, 1980, at which time a $900,000, 3 kilogram, heroin sale was slated to take place in several installments. The sale had been negotiated between undercover DEA agents and appellants and their associates. To the extent relevant to the issues on appeal, the details of that investigation will be set forth below. For convenience, we shall rule upon the issues raised on appeal by referring to the events before, on and after September 3, 1980.

1. *Events Before September 3, 1980*

■ We hold that no searcĥ warrant was required for the installation of two "pen registers" on appellant Todisco's telephones. *Smith v. Maryland*, 442 U.S. 735 (1979). We are not persuaded by appellant's effort to distinguish the *Smith* case on the ground that the pen register there was installed with the assistance of the telephone company. First, the Court in *Smith* held that the telephone company was acting as an agent of the police for Fourth Amendment purposes. *Id.* at 739, n.4. Moreover, the Court's reasoning—that the installation of a pen register is not a Fourth Amendment search—applies with equal force to this

case. In any event, appellants did not move for the suppression of the evidence obtained from the pen register and have not attempted to justify their delay. Their claim, even if it were meritorious, has been waived. *United States v. Rollins*, 522 F.2d 160, 165 (2 Cir. 1975), *cert. denied*, 424 U.S. 918 (1976).

■ There was ample probable cause to support the wiretaps on Todisco's telephone. They were authorized by Chief Judge Weinstein in the Eastern District of New York on August 7, 1980, and were extended by Judge Nickerson of the same court on August 26, 1980. Aside from the deference properly accorded to the determination by the issuing judge that there was probable cause, *United States v. Perry*, 643 F.2d 38, 50 (2 Cir.), *cert. deñied*, —— U.S. ——, 102 S.Ct. 138 (1981), we hold, viewing the supporting affidavits as a whole and in a practical and common sense manner, *United States v. Steinberg*, 525 F.2d 1126, 1130 (2 Cir. 1975), *cert. denied*, 425 U.S. 971 (1976), and in light of the ongoing investigation, that there was probable cause. Todisco, a known narcotics dealer, had numerous contacts with individuals who were selling large quantities of heroin to undercover DEA agents. The pen register had disclosed numerous calls to other known narcotics dealers. Todisco also was seen publicly with known dealers. While these contacts, as appellants suggest, are subject to an innocent interpretation when viewed in isolation, in view of the ongoing investigation and the close proximity in time between many of the contacts and the known sales, we hold that there was probable cause to believe that Todisco was involved.

■ We also hold that the affidavits adequately alleged that normal investigative procedures had been or would be ineffective. The affidavits did disclose the standard investigative techniques which had

---

1. Appellants were sentenced as follows:

Todisco ......Five concurrent 30 year terms; 10 years special parole.

Vallone ......Two concurrent 20 year terms; 10 years special parole.

Barracano ....Up to 10 years under the Young Adult Offender Act.

Zambuto .....Two concurrent 7 year terms; 3 years special parole.

Sferrazza ....Two concurrent 10 year terms; 3 years special parole.

Campopiano ..15 years.

D'Angelo ....Three concurrent 10 year terms; 3 years special parole.

been employed and the paucity of evidence which had resulted, or could be expected to result, therefrom. *United States v. Vasquez*, 605 F.2d 1269, 1282 (2 Cir.), *cert. denied*, 444 U.S. 981 (1979). Appellants' observation that the language employed in the affidavit in this regard resembled that used in another case is irrelevant, especially since there is no claim that the assertions are untrue or do not apply to the facts herein.

■ We also hold that the application was properly authorized. Order No. 799–78 clearly was adequate to empower the Assistant Attorney General of the Criminal Division, Philip Heymann, to authorize the application. *In re Weir*, 520 F.2d 662, 667 (9 Cir. 1975). There is no question here, as there was in *United States v. Giordano*, 416 U.S. 505 (1974) (relied upon by appellants), that the Assistant Attorney General did not actually sign the memorandum approving the application. There is no requirement that the authorizing official must recite his reasons for approving a recommended wiretap application. We decline appellants' invitation to hold that the district court erred in refusing to hold a full evidentiary hearing based on appellants' unfounded speculation.

■ Finally, with respect to the events before September 8, 1980, we hold that the district court's finding of fact that the "August 8, 1980" date on the order authorizing the wiretaps was a ministerial error and therefore insignificant, was not clearly erroneous.

### 2. *Events on September 3, 1980*

■ We hold that the warrantless arrest of Todisco in Apartment 3C at 610 Waring Avenue was lawful. There can be no doubt that, under the precedents in this Circuit, the district court did not err in refusing to suppress the "fruits" of that arrest, including the evidence uncovered in the subsequent search of the apartment. *United States v. Campbell*, 581 F.2d 22, 26 (2 Cir. 1979); *United States v. Reed*, 572 F.2d 412, 424 (2 Cir.), *cert. denied*, 439 U.S. 913 (1978). Todisco was known to be engaged

in a serious crime at the time of his arrest. One of his cohorts had just been arrested with a gun. And, most compellingly, Todisco was in a position to destroy substantial evidence of his guilt. Appellants' assertions that the DEA agents somehow "manufactured" these events are belied by the facts. The agents had no way of knowing, before the events occurred, that Todisco, at the time of the arrests, would be secreted with a large quantity of heroin waiting for co-appellant Vallone to return. While an arrest warrant could have been obtained before September 3, we decline, on the facts of this case, to interfere with the discretion accorded narcotics agents to determine when they will make an arrest. *See United States v. Santiago*, 327 F.2d 573 (2 Cir. 1964). That is especially so here, where there simply is no basis for the claims of appellants.

Since the arrest of Todisco, and the entry subsequent to his arrest, were lawful, there is no question that the search of Apartment 3C, pursuant to a warrant issued on September 3, 1980, also was lawful.

■ Appellants' claims regarding the warrantless arrest of appellant Sferrazza, and the search of the Zambuto residence subsequent to that arrest, also are without merit. Based on the wiretap evidence, and the DEA agents' observations of the meeting between Sferrazza and Todisco on the morning of the September 3 heroin sale, the agents clearly had probable cause to arrest Sferrazza. In the district court Sferrazza unequivocally withdrew his claim that the warrantless arrest in the Zambuto residence somehow violated his Fourth Amendment rights. He also withdrew his claim that evidence seized subsequent to that arrest, and his confession to DEA agents, should be suppressed for that reason.

In view of the claims of other appellants regarding the Sferrazza arrest, however, we hold that, even assuming that a warrant was required to arrest Sferrazza in Zambuto's home absent exigent circumstances, *Steagald v. United States*, 451 U.S. 204 (1981), the arrest here nevertheless was

proper. In that regard, we hold that Judge Ward's findings of fact, stated on the record on December 4, 1980, that exigent circumstances justifying the warrantless arrest clearly existed under the standards set forth in *United States v. Reed, supra,* were not clearly erroneous.

We hold that the evidence seized in the Zambuto home following the Sferrazza arrest was admissible. Mrs. Zambuto's affirmative assistance in the discovery of $300,000 in cash hidden in the Zambuto basement is compelling evidence that she voluntarily consented to the search, *United States v. Rothberg,* 460 F.2d 223 (2 Cir. 1973). The money therefore was admissible. The district court found that Mrs. Zambuto's testimony that she was coerced by the DEA agents to assist in their search was "unbelievable." This finding was based in part on her demeanor and her unresponsive answers to questions on cross-examination. The district court challenged "any who read the record [to] find otherwise." Having carefully read the record, and according deference to the district court's determination of witness credibility, *Alessi v. United States,* 628 F.2d 1133, 1135 (2 Cir. 1980), we hold that the district court's admission of this evidence was proper.

Similarly, we hold that Sferrazza knowingly and intelligently waived his *Miranda* rights before making incriminating statements to the DEA agents. Based on Sferrazza's in-court behavior and the recorded telephone conversations involving him, the district court had an ample basis for discounting appellant's claim that he did not understand English.

We further hold that the execution of the search warrant covering the Zambuto home on the evening of September 3 did not violate anyone's rights under the Fourth Amendment. The district court's finding of fact that the search began before 10 P.M. was not clearly erroneous, in the light of testimony that the agents were notified by telephone that the warrant had been approved by Magistrate Chrein at 9:50 P.M.

The search of Todisco's home, pursuant to a warrant issued on September 3, also was lawful. There is no inconsistency between the September 3 application for that warrant and the DEA agents' earlier application for a wiretap order for Todisco's telephone. There was no evidence, prior to Todisco's arrest on September 3, that he ever physically possessed heroin. There is no merit in appellants' claim that the agents were required to discuss with the magistrate on September 3 the contents of the earlier, irrelevant, application for a wiretap.

## 3. Events After September 3

We hold that the district court did not abuse its discretion in refusing to grant a continuance after the filing of a superseding indictment on November 25, 1980. First, the Speedy Trial Act, 18 U.S.C. § 3161(c) (1980 Supp.), does not divest the district court of its discretion to grant or refuse a continuance. The district court's inquiry and ruling on the motion for a continuance was consistent with the guidelines promulgated by this Circuit under the Speedy Trial Act. Guidelines Under the Speedy Trial Act, II L, comment, at 31 (January 16, 1979). While those guidelines do not have the force of law, they are entitled to appropriate respect. Appellants' arguments do not convince us that those guidelines are incorrect or inconsistent with the statute, or that 18 U.S.C. § 3161(c) stripped the district court of its discretion under the circumstances of this case.

In view of the fact that the charges in the superseding indictment were substantially the same as those in the original indictment and in view of the fact that substantial discovery had taken place, we hold that the district court did not abuse its discretion in refusing to grant a continuance.

Similarly, the district court did not abuse its discretion in refusing to grant D'Angelo a continuance on the eve of trial to obtain new counsel. The court gave

D'Angelo an ample and continuing opportunity to air his complaints about counsel. These amounted to no more than a disagreement about tactics and an unspecified "loss of confidence." The court had ample opportunity to observe counsel and to note his competence during the months before trial when the same counsel represented D'Angelo, without incident. In addition, the court did its utmost to accommodate D'Angelo's concerns without disrupting the scheduling of this complex jury trial. We repeatedly have expressed our concern that district courts be wary of eleventh hour requests for new counsel. *E.g., United States v. Carroll,* 510 F.2d 507, 510 (2 Cir. 1975); *United States v. Llanes,* 374 F.2d 712, 717 (2 Cir. 1967). Under the circumstances of this case, we hold that the district court's refusal to grant a continuance was a proper exercise of its discretion.

■ We also hold that D'Angelo's representation at trial was by no means constitutionally ineffective under this Circuit's standard. *E.g., United States v. Bubar,* 567 F.2d 192, 202 (2 Cir.), *cert. denied,* 434 U.S. 872 (1977). We find no merit in the claim that the district court deprived D'Angelo of a fair trial by failing to exclude evidence which appellant's counsel made a conscious, tactical, decision to present.

■ We further hold that there was sufficient evidence to support the jury verdict convicting D'Angelo. First, the court did not err in admitting the hearsay statements of D'Angelo's co-conspirators. There was ample independent evidence of D'Angelo's participation in the conspiracy to permit the admission of these statements. *United States v. Geaney,* 417 F.2d 1117 (2 Cir. 1969). The court and jury were free to reject D'Angelo's "innocent" interpretation of the telephone calls and clandestine meetings which D'Angelo had with Todisco and his associates. *United States v. Weisman,* 624 F.2d 1118, 1130 (2 Cir.), *cert. denied,* 449 U.S. 871 (1980). In asking us to accept his innocent gloss on the evidence before the district court, D'Angelo in effect is asking us to view those events in isolation and to disregard the fact that they occurred

during substantial heroin sales to undercover agents. We hold that there was sufficient evidence upon which the jury could find D'Angelo guilty beyond a reasonable doubt.

■ Finally, we hold that Todisco's claim that his guilty plea was not knowingly and intelligently made is frivolous. Todisco, represented by counsel, engaged in a colloquy with the district court which more than adequately demonstrated that he understood the nature of the charges to which he pled guilty.

All appellants were convicted of serious offenses on the basis of overwhelming evidence of guilt—six by pleading guilty and one after a jury trial. Our careful examination of the record satisfies us that all appellants were accorded a fair hearing, by a conscientious district judge, on their pretrial motions and, in the case of one appellant, at his jury trial. We affirm the convictions of all appellants on all counts. We order that the mandate issue forthwith.

Affirmed.